Korr, Appellant, *v.* Butz et al.

Argued December 11, 1944. Before KELLER, P. J., BALDRIGE, RHODES, HIRT and RENO, JJ. (JAMES, J., absent).

*Edward Unterberger,* with him *Louis Stamberg,* for appellant.

*E. K. Kline, Jr.,* with him *Kline & Kline,* for appellees.

OPINION BY BALDRIGE, P. J., January 25, 1945:

Plaintiff has appealed from the refusal of the court below to enter judgment for want of a sufficient affidavit of defense in an action brought to recover certain monies alleged to be due under a written contract.

Plaintiff's statement sets forth that he is the owner of a building known as the "Earle Theatre" in Allentown, which he purchased subject to a prior mortgage of $100,000, securing bonds held by various individuals. On January 2, 1940, an agreement was entered into between the plaintiff and the various bondholders, which provided inter alia for the extension of the term of the mortgage and reduction of the interest rate from 6% to 5%. The defendants, substituted trustees under the mortgage, were each to receive as compensation for services rendered, the sum of $150 per year. The plaintiff agreed therein to deposit with these substituted trustees the sum of $800 per month to be used by them "in paying the interest on the aforesaid mortgage, all taxes assessed against the building, fire insurance premiums, *incidental expenses* and the annual sum of at least $1,000 toward the amortization of the mortgage." (Italics supplied.)

It was further stipulated that any balance remaining in the hands of the trustees after payment of the foregoing items, should belong to the owner, the plaintiff herein, and that any deficit should be made up by him. Plaintiff claimed defendants had improperly retained from the funds paid them commissions for the years 1940 to 1942 inclusive, amounting to $900 plus $96.50 they paid for clerk hire, postage, etc., or a total of $996.50.

Defendants in their affidavit of defense admitted all the facts averred in the plaintiff's statement, but claimed that the funds sued for were properly retained under the terms of the agreement. The plaintiff in his rule for judgment for want of sufficient affidavit of defense asked for a summary judgment on the ground that defendants admitted all the facts alleged by him and stated further that the sole issue in this case is the interpretation of the agreement of January 2, 1940, which is "for the court as a matter of law." *Hay v. Pittsburgh Lodge No. 46, Loyal Order of Moose,* 137 Pa. Superior Ct. 205, 211, 8 A. 2d 434. Both parties correctly treated the question raised by plaintiff's motion as purely one of law, as no factual issues were raised and they agreed that the court should give a judicial interpretation of the words "incidental expenses" as used in the agreement.

The court below discharged plaintiff's rule and, in compliance with the request of both parties, construed the language in the agreement, which is in controversy, holding that it justified defendants in deducting and retaining their commissions together with their expenses out of the monies paid by the plaintiff. Plaintiff appealed.

Appellant complains that the affidavit of defense avers that he did not set forth in detail all the items which the trustees were to pay out of the monthly instalments paid to them by him, without specifying the alleged omissions. "The defense must, therefore, be

found in something which the plaintiff did not set forth." Neither in the court below, in the assignments of error, nor in the statement of questions involved is any reference made to technical objections to the form of the affidavit of defense. We are not now concerned, therefore, with the alleged defect. In any event the contention is without merit. We give it but passing comment.

In construing this agreement the intention of the parties should be ascertained if possible and given effect. For this purpose we may not only resort to the language used, but the attending conditions and circumstances: *Slonaker v. P. G. Publishing Co.,* 338 Pa. 292, 13 A. 2d 48; *Kaufmann's Estate,* 137 Pa. Superior Ct. 88, 92, 8 A. 2d 472. The agreement expressly provides that these defendants as trustees were to be paid for their services. It does not stipulate that the bondholders are to pay them. In paragraph 7 the bondholders do expressly agree to have deducted from the amount deposited in the bank from interest paid prior to the appointment of these substituted trustees, the trustees' fees and other legal expenses incurred in the procurement of the agreement. An omission to state that they would pay the trustees thereafter is significant. If that were contemplated it very probably would have been so stipulated. We find in the 11th section of paragraph 8 the owner agreed "to pay through the substituted trustees" the semi-annual interest of $2\frac{1}{2}\%$. It would seem that the bondholders were to receive their full 5% annual interest as though paid to them directly without any deduction. Furthermore the fact that monthly amounts paid by the owner, if the commissions of the trustees were not to be paid therefrom, far exceed the amount required, throws light upon the understanding of the parties; *Monongahela Street Railway Co. v. Philadelphia Company et al.,* 350 Pa. 603, 618, 619, 39 A. 2d 909. The owner would not be apt to agree to pay monthly a larger amount than obviously was required for the contemplated disbursements.

The words "incidental expenses" refer to expenses incident to discharging the duties of the trust. The payment of commissions and the expenses incurred appertain to the trusteeship. While "incidental" may be used in the sense of being casual, a fortuitous happening, by chance, collateral, or secondary as appellant argues, it is defined also in the New English Dictionary (Oxford, 1901) as follows: "Of a charge or expense: Such as is incurred (in the execution of some plan or purpose) apart from the primary disbursements." Webster's New International Dictionary defines it as: "Casual; hence, not of prime concern; subordinate; as, an incidental expense." The payments questioned were incurred in the execution of the plan agreed upon and are subordinate or secondary as distinguished from the primary disbursements, viz., the payment of taxes, insurance, payments on the mortgage. *They* are of vital importance as they protect the property and safeguard the investment. The commissions and the other disputed items were subordinate to those main purposes. A study of this agreement from its four corners indicates to us that the appellant, rather than the holders of the bonds, was to compensate the trustees.

The court below was, in our judgment, correct in refusing plaintiff's motion for judgment for want of a sufficient affidavit of defense.

Order is affirmed.