**W. S. McALEER, Plaintiff,**

v.

**McNALLY PITTSBURG MFG. CORP., Defendant.**

**Civ. A. No. 60–597.**

United States District Court
W. D. Pennsylvania.

Oct. 11, 1961.

Mulvihill, Grier, Duggan & Hampsey, Pittsburgh, Pa., for plaintiff.

Thorp, Reed & Armstrong, Pittsburgh, Pa., for defendant.

WILLSON, District Judge.

This breach of contract case came on for trial nonjury. The evidence has been

taken and counsel have been heard and briefs filed. The evidence, including the facts stipulated, substantially shows the following:

Plaintiff W. S. McAleer, is an engineer by profession and a long time employee of defendant at its Pittsburgh, Pa., office. On April 14, 1959, after reduction in its Pittsburgh, Pa., staff and removal of its activity to its Pittsburg, Kansas, main office, defendant's President wrote plaintiff a letter reviewing their past relationship and what the prospects in the future held. Defendant proposed to plaintiff that " * * * you operate from your home and list your home phone number in the Pittsburgh telephone directory, * * * " to receive whatever calls come in. It was suggested that plaintiff restrict his activities almost exclusively to the Koppers and Wilputte accounts, referring other inquiries either to Pittsburg or to Wellston for sales follow-up. There was a suggestion in the letter that plaintiff's health had deteriorated and that the reduced activity might perhaps benefit him. It was proposed also that the arrangements continue until plaintiff's retirement for which plaintiff was to become eligible on July 31, 1961. It was further proposed that beginning July 1, 1959, plaintiff's salary would be reduced " * * * to reflect your reduced activities, to $500 per month * * * ", plus traveling expenses actually incurred. Plaintiff was assured that his interest in the retirement plan " * * * is vested in you and that your retirement pay will be unimpaired under any circumstances. * * * " Plaintiff did not accept the offer as such but carried on negotiations and finally the parties agreed that plaintiff receive a salary of $7,500 per year or $625 per month for the period mentioned, and plaintiff thereupon continued in his employment with defendant.

However, early in the fall of 1959, plaintiff commenced to do some work for Peter Loftus, Inc., on a part time basis, says plaintiff, with " * * * the permission of defendant. * * * " About November 1, 1959, plaintiff began more or less steady work with Peter Loftus, Inc., but still on a part time basis at a per diem of $50 per day. The evidence is that from November 1, 1959, to April, 1960, plaintiff spent between 50% to 75% of his time working for Peter Loftus, Inc. In April of 1960 a discussion arose between plaintiff and defendant's President, apparently over plaintiff's outside work, and at that time defendant notified plaintiff of its intention to terminate its employment in July of 1960. However, on May 20, 1960, following a discussion about legal redress by the plaintiff, his employment with the defendant was terminated as of the latter date. Thereafter plaintiff worked for Peter Loftus, Inc. practically 100% on a per diem basis at the rate of $75.00 per day until January 1, 1961, when he went with Peter Loftus at an annual salary of $21,000 per year. Plaintiff himself estimated that his earnings with Peter Loftus during 1960 amounted to about $15,000.

This is a diversity civil action, plaintiff being a citizen of Pennsylvania residing in Pittsburgh, and defendant, McNally Pittsburg Manufacturing Company, a corporation existing under the laws of the State of Kansas with its principal office in the State of Kansas with authority to do business in Pennsylvania. Plaintiff, in his complaint, alleges a diversity jurisdiction, 28 U.S.C.A. § 1332, and then says in Paragraph 3, " * * * and the amount in controversy exceeding $10,-000.00 exclusive of interest and costs. * * * " Just prior to trial, and after a pre-trial stipulation had been entered into, defendant presented a motion to dismiss on the ground that the court lacked jurisdiction because in the stipulation of counsel filed of record it appears that the maximum recovery, exclusive of interest and costs is $9,713.04. On the basis that the general rule is that the amount in controversy as shown on the fact of the complaint is generally sufficient to establish the jurisdiction of the court, and that this complaint claimed in excess of $10,000, the motion to dismiss was denied. The motion was renewed, however, after the conclusion of the evidence introduced at the trial. My state-

ment then from the bench was that the motion would be denied but that the defendant would have judgment based upon the merits of the case.

 My feeling after hearing all the evidence was that plaintiff had not made out a contract on which he could sue for breach. It appears then and still does, after review of the evidence and the briefs, that plaintiff was employed at will. That the offer to continue his employment until his retirement age was no more than the arrangement the parties had already entered into, that is, an at will hiring on a general understanding that it was on a continued basis. If it were otherwise, then the plaintiff was not bound at all to accept his reduction in salary. He had been making about $21,000 a year, with the defendant but in some years had made as high as $35,000 a year. As the evidence was viewed by me as trial judge, it seemed that there was no consideration passing between the parties which developed into a binding contract. See Restatement of Contracts, Section 76, page 83 and Trainer v. Laird et al., 1936, 320 Pa. 414, 183 A. 40. And further, it seems hornbook law that a person in the plaintiff's position is bound to, in the case of a breach, mitigate the damages. Plaintiff has amply done so. The evidence that defendant had agreed to plaintiff's arrangements with Peter Loftus, Inc. rests solely upon plaintiff's testimony. From that testimony it has not been established that defendant agreed to continue the arrangements set forth in the letter with the knowledge that plaintiff was making $50 per day commencing November 1, 1959, from other sources, all of which aggregated some $15,000 for the year 1960. It is evident from the proposal in the letter of April 14, 1959, that defendant considered plaintiff in the position of one about to retire and was easing his passing, so to speak, toward retirement. Plaintiff by his own statement never told defendant what he was making with Peter Loftus, Inc. Plaintiff does say however that defendant agreed to outside employment. As to what exactly was agreed to is un-

clear under the evidence. However, plaintiff has failed to show by a preponderance of the evidence that plaintiff agreed to the novation in the contract asserted by plaintiff. For instance, plaintiff did not say that defendant agreed that he could work for Peter Loftus at $50 or $75 per day nor did plaintiff testify that defendant agreed that he could spend 50% to 75% of his time for Peter Loftus, Inc. The court simply finds it impossible to accept plaintiff's contention that defendant had agreed to the Peter Loftus employment as shown in the evidence. Under the circumstances then, as the court sees it, if the letter and the acceptance in the first instance amounted to a binding contract then plaintiff has failed to prove by the evidence that the change suggested by him was agreed to by defendant. On the face of the letter plaintiff owed all his time to defendant, his activity only, however, being reduced. On the merits of the case, therefore, the court finds for the defendant both on the lack of contract and if there was a contract then plaintiff has not proven any damages as a result of the breach thereof.

*On the Issue of Jurisdiction*

 Based on all the evidence offered at the trial and on reflected judgment, I have concluded that the jurisdictional amount was not involved in the case and therefore the motion to dismiss although orally denied from the bench should have been granted and it will be so ordered. The rule seems clear and has been repeated in a Supreme Court opinion, decided at the last term, June 12, 1961, Horton v. Liberty Mutual Insurance Co., 367 U.S. 348, page 353, 81 S.Ct. 1570, page 1573, 6 L.Ed.2d 890:

"* * * The general federal rule has long been to decide what the amount in controversy is from the complaint itself, unless it appears or is in some way shown that the amount stated in the complaint is not claimed 'in good faith.' In deciding this question of good faith we have said that it 'must appear to a legal certainty that the claim is really

for less than the jurisdictional amount to justify dismissal.' * * "

As mentioned, the parties entered into a pretrial stipulation in which it was agreed that the most plaintiff could recover in salary from May 20, 1960, when he was discharged until his retirement date July 31, 1961, would be $8,950. That is the aggregate salary at the rate of $625 per month. In addition plaintiff would be entitled to the amount of the reduction of his annuity and the most he could recover for the reduction is $678.14. Added to that sum, plaintiff could recover $84.90 because of the lessening in the cash value of a life insurance policy carried by the defendant. The three sums added together come to $9,713.04 and this is the aggregate amount that plaintiff could recover in this civil action. The first sum, that is the salary, was merely a matter of computation which could have been made by plaintiff or his counsel prior to the filing of the complaint. The other two amounts required a not too extensive investigation or examination to determine what plaintiff was entitled to receive. The only evidence as to what plaintiff did reveal as far as investigating these amounts is concerned comes on his cross-examination. In that examination he admitted that he made no search or investigation whatsoever to determine what the reduction in his retirement plan amounted to by reason of his discharge in May of 1960, rather than having his employment severed on his retirement date. Plaintiff also said that he made no inquiry or search whatsoever in an effort to determine any lessening in the value of his life insurance policy. Under the evidence then it is clear that at no time did plaintiff have a claim in excess of $10,000 as required by 28 U.S.C.A. § 1332 for this court to have jurisdiction. In this situation also plaintiff's good faith is open to challenge by the facts disclosed at the trial. That evidence shows to a legal certainty that plaintiff's claim never could have amounted to a sum in excess of $10,000. Plaintiff has not only failed to show good faith but his own testimony shows bad faith in making an assertion that the amount exceeded $10,000. Therefore, this court finds that the amount in controversy in this civil action was at all times and still is a sum less than $10,000, and by reason thereof the court has no jurisdiction.

This opinion is regarded as comprising the findings of fact and conclusions of law.